# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

GROUP ASSETS, LLC, et al.,

    Plaintiffs,

v.

Case No. 8:09-cv-01530-VMC-EAJ

FORTRESS INVESTMENT
GROUP LLC, et al.,
    Defendant.

## OBJECTIONS OF GROUP ASSETS, LLC, DR. GLENN W. CHERRY AND CHARLES W. CHERRY II TO JUNE 22, 2010 REPORT AND RECOMMENDATION

In accordance with the provisions of 28 U.S.C. §636, Plaintiffs Group Assets, LLC, Dr. Glenn W. Cherry and Charles W. Cherry II, hereby respectfully object to the June 22, 2010 Report and Recommendation of Magistrate Judge Jenkins, Docket No. 43 (hereinafter the "Report"), in its entirety.

The Plaintiffs object to each recommendation of Magistrate Judge Jenkins in relation to each of the five claims pleaded by Plaintiffs due to the clearly erroneous nature of the Magistrate Judge's findings. Plaintiffs specifically incorporate herein all arguments raised in their opposition to Defendants' Motions to Dismiss and Defendant Fortress Group LLC's Motion to Stay. Plaintiffs' arguments are set forth within Docket No. 32 and 40, and specifically incorporated herein. Further, Plaintiffs object on the additional specific grounds set forth below.

## A. SUBJECT MATTER JURISDICTION

The Magistrate Judge concluded that there is no subject matter jurisdiction, due to the purported lack of diversity jurisdiction, based solely on the Declaration of Elise Hubsher ("Hubsher"), Docket No. 20, relative to VRF Fund. This conclusion is erroneous on multiple grounds. As a preliminary matter, the Declaration of Hubsher, a Managing Director of Defendant Fortress Investment Group, is immaterial to the question of subject matter jurisdiction in this case since Hubsher does not address citizenship of VRF Fund as of the **date of filing** of the Complaint, August 10, 2009 – the **only** date that is relevant for purposes of determining diversity jurisdiction. *See, e.g., Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428, 111 S. Ct. 858, 112 L. Ed. 2d 951 (1991) (citing cases) ("if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events"); *Louisville, N.A. & C. Ry. Co, v. Louisville Trust Co.*, 1899, 174 U.S. 552, 19 S.Ct. 817, 43 L.Ed. 1081 (1899). Rather, Hubsher merely indicates that as of the date of the Declaration, December 21, 2009, that "two of the VRF Fund members are Florida domiciled trusts" and "[a]t least one of the beneficiaries of each of these trusts is an individual who is a Florida citizen." Hubsher Declaration, ¶¶ 3, 4 (emphasis added). Accordingly, the Declaration is facially deficient as to the critical question of citizenship on the date of filing of the Complaint, which occurred over four months prior to Hubsher's Declaration. See *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. at 428.

Second, Hubsher's purely conclusory allegations that VRF Fund members are Florida "domiciled trusts" and that at least one beneficiary of each trust is a Florida "citizen" do not suffice for purposes of destroying diversity. Her Declaration does not even identify the members

2

or beneficiaries, much less any facts to show citizenship, as would be required to negate diversity jurisdiction. *See Int'l. Ass'n. of Machinists v. Eastern Airlines, Inc.*, 320 F.2d 451 (5th Cir. 1963) ("Plaintiff, presumably being a voluntary unincorporated association, is not a citizen in any particular state in its own right and the actual citizenship of its members is determinative. It presumably has a membership in Florida, but whether it does or not it was incumbent upon defendant to allege facts showing jurisdiction of the court and this would require allegations negativing its being such voluntary unincorporated association or facts as to the residence or citizenship of its members.") (emphasis added, citations omitted).

Third, the citizenship of a trust is determined by the citizenship of each of its trustees, not the beneficiaries. *See, e.g. Bass v. International Broth. of Boilermakers*, 630 F.2d 1058, 1067 (5th Cir. 1980) (citing *Thomas v. Board of Trustees of Ohio State University*, 195 U.S. 207, 25 S. Ct. 24, 49 L. Ed. 160 (1904)); *United Steelworkers of America v. R. H. Bouligny, Inc.*, 382 U.S. 145, 86 S. Ct. 272, 15 L. Ed. 2d 217 (1965)); *Larwin Mortg. Investors v. Riverdrive Mall, Inc.*, 392 F. Supp. 97, 99-100 (S.D. Tex. 1975) ("abundant authority exists for the proposition that for diversity purposes the citizenship of a trust will be determined by the citizenship of the trustees, the citizenship of the beneficiaries being considered immaterial"). Accordingly, Hubsher's reliance on the citizenship of the trust beneficiaries to establish the citizenship of the trust members (and, apparently, of VRF Fund members), is clearly mistaken.

Fourth, "[t]o show state citizenship for the purposes of diversity of citizenship, a party must (1) be a citizen of the United States, and (2) be domiciled in the state." *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983) (emphasis added), citing *Sadat v. Mertes*, 615 F.2d 1176, 1180 (7th Cir. 1980); *Fahrner v. Gentzsch*, 355 F. Supp. 349, 353 (E.D. Pa. 1972); 1 *Moore's Federal Practice* para. 0.74[2. 1], at 707.20 (2d ed. 1982); H. Hart & H.

Wechsler, *The Federal Courts and the Federal System* 1062 (2d ed. 1973). The Hubsher Declaration is thus also deficient because it fails to even address whether the Fund members and trustees are United States citizens. *See id. See also Pannill v. Roanoke Times* Co., 252 F. 910, 928, 930 (W.D. Va. 1918) (domicile and citizenship are not synonymous for diversity purposes in the case where a person departs from his state of domicile intending never to return, but has not yet acquired a new domicile).

Fifth, the citizenship of VRF Fund is immaterial in any event because the Fund is part and parcel of defendant Fortress Investment Group. In Fortress Investment Group's SEC filings, it lists VRF Fund as one of its subsidiaries. *See, e.g.* EX-21.1 of Form 10-K filed by Fortress Investment Group LLC on 03/01/2010, entitled "FORTRESS INVESTMENT GROUP LLC SUBSIDIARIES," accessed at http://www.sec.gov/Archives/edgar/data/1380393/000119312510044300/dex211.htm. Moreover, VRF Fund has made no SEC filings on its own behalf, and by all outward appearances it has no corporate existence independent of Fortress Investment Group.[1] Accordingly, the (non-Florida) citizenship of Fortress Investment Group should be imputed to VRF Fund. *See Bonar, Inc. v. Schottland*, 631 F. Supp. 990, 997-98 (E.D. Pa. 1986) (imputing citizenship of parent to subsidiary where evidence showed that the business of both was "identical" and court determined that their formal separation was "merely a corporate fiction").[2]

---

[1] A recent search of the SEC's Edgar database did not produce a single filing made by VRF Fund. References to VRF Fund are found in SEC filings made by Fortress Investment Group, and none of these shed light on the identity of the members of VRF Fund or suggest that the Fund operates independent of Fortress. *See, e.g.*, Form 10-K filed by Fortress Investment Group LLC, on March 1, 2010, accessed at http://www.sec.gov/Archives/edgar/data/1380393/000119312510044300/d10k.htm ("On May 5, 2009, consolidated affiliates of Fortress executed several agreements, effective June 1, 2009, to become the investment manager of certain investment funds then managed by D.B. Zwirn & Co., L.P. (the "Value Recovery Funds")."

[2] In *Bonar*, the court stated:

Finally, and perhaps most importantly of all, Plaintiffs have been prevented from conducting any discovery regarding the citizenship of VRF Fund – or of any matter. On June 2, 2010, Fortress Investment Group moved to stay discovery to block Plaintiffs' discovery (Docket No. 39). Plaintiffs immediately and strenuously opposed the Motion to Stay (Docket No. 40), but the Magistrate Judge granted the Motions to Dismiss shortly thereafter. In addition to the outright legal errors that underpin Hubsher's Declaration, there are numerous reasons why her conclusory allegations of citizenship may not have withstood examination. However, in ruling on the Motions to Dismiss, the Judge Magistrate accepted the flawed Declaration at face value, thus preventing any inquiry of the facts regarding citizenship. Thwarting discovery in this manner was as abuse of discretion, and especially egregious because information regarding the citizenship of VRF Fund members is not publically available.[3] *See, e.g., Guzman v. Blockbuster, Inc.*, Civ. No. 09-00076, 2010 U.S. Dist. LEXIS 11668, *24 (D. Haw. Feb. 10, 2010) (permitting the parties to conduct discovery regarding the issue of diversity jurisdiction because "it is important to the court to determine whether it has diversity jurisdiction over [the state] claims").

---

> Where…the corporate separation is "fictitious" or where the subsidiary's business is not distinguishable from the business of the parent and they are acting as one or are in fact one corporate entity, the parent's place of business is recognized as the principal place of business of the subsidiary. *See, e.g., Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 557 (5th Cir. 1985); *Panalpina Welttransport GMBH v. Geosource, Inc.*, 764 F.2d 352, 354-55 (5th Cir. 1985); *United States v. Reserve Mining Co.*, 380 F. Supp. 11, 27 (D.Minn. 1974), aff'd, Reserve Mining Co. v. EPA, 514 F.2d 492 (8th Cir. 1975). *See generally Fritz v. American Home Shield Corp.*, 751 F.2d 1152, 1153 (11th Cir. 1985); *Toms v. Country Quality Meats, Inc.*, 610 F.2d 313, 315-16 (5th Cir. 1980); *Frazier, III v. Alabama Motor Club, Inc.*, 349 F.2d 456, 460 (5th Cir. 1965).

*Bonar, Inc. v. Schottland*, 631 F. Supp. at 997.

[3] See footnote 1, *supra*.

For each of the foregoing reasons, the Judge Magistrate erroneously found that the purported Florida citizenship of VRF Fund destroyed diversity jurisdiction.

## B. **MOTIONS TO DISMISS FOR FAILURE TO STATE CLAIM**

### 1. **Fraudulent Transfer**

The Judge Magistrate concluded there is no sufficient transfer alleged by Plaintiffs to support the fraudulent transfer claim because Her Honor accepted Defendants' argument that replacing the investment manager for the Fund was not a transfer. However, replacement of the investment manager is not all that occurred, nor is it all that Plaintiffs alleged as comprising the fraudulent transfer. In this regard, the Magistrate Judge states that in ¶ 38 of the Amended Complaint Plaintiffs allege that the replacement of Fortress VRF Advisors I LLC for D.B. Zwirn & Co., L.P. constituted the requisite transfer. Report, page 6. The Magistrate Judge is mistaken because ¶38 is certainly not so limited, and its full text is set out below:

> 38. Through the fraudulent scheme, as detailed above, Zwirn and DBZ transferred control over valuable assets from DBZ and its affiliates and predecessors worth more than $7 billion to Fortress for "a song," according to published reports in the Wall Street Journal and trade publications, and according to Zwirn's own Proxy Statement.

"The fraudulent scheme, as detailed above," and referenced in ¶38, in turn refers to extensive prior allegations that describe the transfer scheme, including the following:

> 30. ...Essentially, the Zwirn Defendants, which formerly owned, managed, or have secured interests in some $7 billion in assets – including Tama's assets formerly valued at $28 million – conveyed control of [] those assets to a Fortress-affiliated company for a total of $51 million, including a $15 million cash fund in attorneys' fees for the Zwirn Defendants to defend themselves, as well as $17.2 million of compensation divvied up among the Zwirn Defendants.

> 31. The $51 million was paid to the Zwirn Defendants not from Fortress' assets, but from the assets owned by Zwirn and now controlled by Fortress.

6

32. Defendants are paying Fortress to take assets off of Zwirn's corporate hands, as if Tama's assets have no value.

33. As a result of DBZ's transfer of control in the event that Plaintiffs prevail on their claims against Zwirn and DBZ, DBZ will have no assets to satisfy Plaintiffs' claims.

Amended Complaint, ¶¶ 30-33.

Fortress' receipt of value by reason of the conveyance of an interest by DBZ is also reflected in documents Fortress filed with the SEC. For example, in a Press Release filed on August 7, 2009, Fortress acknowledged that its capital raised in the three months ending June 30, 2009, "[i]ncludes $3.1 billion of capital under management <u>due to Fortress's take over of management of the **D.B. Zwirn funds** and related investment vehicles</u>." Press Release, filed August 7, 2009, by Fortress Investment Group LLC, accessed at http://www.sec.gov/Archives/edgar/data/1380393/000119312509167619/dex991.htm (emphasis added).

The Judge Magistrate also believed it relevant that Plaintiffs "do not allege that they are creditors of D.B. Zwirn & Co., L.P. Unlike the Fund, D.B. Zwirn & Co., L.P. is not named as a Defendant in this suit or the Derivative Suit." Report, page 7, fn 6. This statement misses the point of the fraudulent transfer claim and reflects a misconstruction of the definition of the term "transfer." As used in the Florida Uniform Fraudulent Transfer Act ("FUFTA"), Fla. Stat. ch. 726.101 *et seq.*, a "transfer" is <u>not</u> limited to direct transfers or to the disposal of assets, but is defined broadly to encompass "<u>every</u> mode, direct <u>or indirect</u>, absolute or conditional, voluntary or involuntary, of disposing of <u>or parting with</u> an asset <u>or an interest in an asset</u>..." Fla. Stat. § 716.101(12) (emphasis added). Accordingly, Plaintiffs' allegations discussed above, that the Zwirn Defendants conveyed control of some $7 billion in assets or interests in assets in which

7

the Zwirn Defendants formerly had an interest to Fortress and a Fortress-affiliated company (*i.e.* VRF Fund) for less than fair value in order to hinder, delay or otherwise interfere with creditors are clearly sufficient to allege fraudulent transfer claims against the Zwirn Defendants, Fortress and VRF Fund. *See* Fla. Stat. § 716.101(12). D.B. Zwirn & Co., L.P. was merely one of the vehicles by which these Defendants accomplished the fraudulent transfer scheme, and it need not be joined in order for Plaintiffs to state fraudulent transfer claims against the current Defendants. *See id.*

### 2. Civil Conspiracy and Aiding and Abetting

Plaintiffs' civil conspiracy and aiding and abetting claims are premised on their fraudulent transfer claims (Docket No. 27 at ¶¶ 51, 55). Because Plaintiffs have stated claims for fraudulent transfer and underlying wrongful acts by Defendants, the Judge Magistrate erroneously concluded that the conspiracy and aiding and abetting claims should be dismissed (Report, page 7). *See Johnson Law Group v. Elimadebt USA, LLC*, 2010 U.S. Dist. LEXIS 51079, *21 (S.D. Fla. May 24, 2010) (because complaint adequately pled an actionable claim for malicious prosecution and that Defendants committed unlawful act, court found plaintiffs' civil conspiracy claim was adequately supported by both an underlying tort and an unlawful act under Florida law); *cf. Rogers v. Nacchio*, 241 F. App'x 602, 609 (11th Cir. 2007) (*per curiam*) (*unpublished*) (approving dismissal of conspiracy and aiding and abetting claims where complaint failed to state claim on underlying counts).

### 3. Unjust Enrichment

The Judge Magistrate concluded that the claim for unjust enrichment should be dismissed because Plaintiffs premise this claim on the commission of a wrong and "'[t]he law of unjust enrichment is concerned solely with enrichments that are unjust independently of wrongs and

8

contracts.'" Report, page 8, quoting *Flint v. ABB, Inc.*, 337 F.3d 1326, 1331 n.2 (11th Cir. 2003). However, Plaintiffs have <u>not</u> alleged a breach of contract claim against any of the Defendants, and "'<u>until an express enforceable contract is proven, the equitable claim of unjust enrichment is not barred</u>.'" *Citadel Commerce Corp. v. Cook Sys., LLC*, 2009 U.S. Dist. LEXIS 38171, *8-9 (M.D. Fla. May 5, 2009), citing *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. 5th DCA 1998) ("It is only upon a showing that an express contract exists that the unjust enrichment or promissory estoppel count fails. Until an express contract is proven, a motion to dismiss a claim for promissory estoppel or unjust enrichment on these grounds is premature.") (citation omitted)).

Plaintiffs again request leave to amend their unjust enrichment claim to plead that the debtor (DBZ) served as a conduit for the transfer of interests in funds to Fortress that properly belonged to Plaintiffs, thereby satisfying the "plaintiffs conferred a benefit" element for an unjust enrichment claim. *Cf. Wiand v. Waxenberg*, 611 F. Supp. 2d 1299, 1310 (M.D. Fla. 2009) (court acknowledged that use of such a third party conduit could constitute a "direct benefit" from plaintiff for purposes of an unjust enrichment claim in certain cases). With this proposed amendment, Plaintiffs should be entitled to pursue their claim for unjust enrichment against Fortress. *See id.*; *Citadel Commerce Corp. v. Cook Sys., LLC, supra*; *Williams v. Bear Stearns & Co., supra*.

## C. SUMMARY

The Report erroneously accepted and relied upon the Hubsher Declaration in concluding that there is no subject matter jurisdiction based on diversity jurisdiction. With respect to the Defendants' motions to dismiss for failure to state claims, the Report ignores applicable law and clear language within the Amended Complaint that state claims for fraudulent transfer (actual and constructive), civil conspiracy, aiding and abetting and unjust enrichment. For the reasons set forth above, and for the additional reasons previously presented by Plaintiffs in Docket Nos. 32 and 40, the Report and Recommendation should be rejected in its entirety. The Motions to Dismiss and Motion for Stay of Discovery should be overruled, and Plaintiffs should be granted leave to amend the Amended Complaint as described hereinabove.

RESPECTFULLY SUBMITTED this 6th day of July, 2010.

                                                      *s/Percy Squire, Esq.*
                                                     PERCY SQUIRE (0022010)
                                                     PERCY SQUIRE CO., LLC
                                                     514 S. High Street
                                                   Columbus, Ohio 43215
                                                   Telephone: (614) 224-6525
                                                   Facsimile: (614) 224-6529
                                                   psquire@sp-lawfirm.com
                                                   Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties on the attached service list as indicated by electronic mail via the Court's Electronic Document Filing System, U.S. Postal Service or facsimile, July 6, 2010:

FORTRESS INVESTMENT GROUP
1345 Avenue of the Americas, 46th FL
New York, NY 10151

RL TRANSITION CORPORATION
745 Fifth Avenue, 18th Floor
New York, NY 10151

ROCKLYNN RADIO, LLC
GROWTH PARTNERS, L.P.
745 Fifth Avenue, 18th Floor
New York, NY 10151

D.B. ZWIRN SPECIAL
OPPORTUNITIES FUND, L.P.
745 Fifth Avenue, 18th Floor
New York, NY 10151

D.B. ZWIRN
745 Fifth Avenue, 18th Floor
New York, NY 10151

                                                       *s/Percy Squire*
                                                       Percy Squire (0022010)